UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Emily Cohen, on behalf of herself and all others similarly situated, | : <br> : <br> : |
| Plaintiff, | : <br> : CIVIL ACTION NO. 1:23-cv-403 |
| v. | : **CLASS ACTION** <br> : |
| CVS Pharmacy, Inc., | : <br> : |
| Defendant. | : |

**CLASS ACTION COMPLAINT**

Plaintiff Emily Cohen ("Plaintiff"), individually and on behalf of Classes of all persons similarly situated, upon personal knowledge as to herself and her own conduct, and as to all other matters upon information and belief based upon the investigation made by her attorneys, alleges for her complaint as follows:

**INTRODUCTION**

1. Plaintiff seeks damages and equitable relief, individually and on behalf of all other members of the Classes, for Defendant CVS's sales of its oral pharmaceutical products containing phenylephrine, an ingredient that was falsely and misleadingly marketed by Defendant as acting as a decongestant and sold to Plaintiff and the other members of the Classes by Defendant.

2. Phenylephrine is found in over-the-counter oral medications that were promoted by Defendant as acting as nasal decongestants—the "Decongestant Products."

3. In 2022, nearly $1.8 billion in sales of phenylephrine-containing products were made in the United States, comprising approximately 80% of the market for over-the-counter decongestants.

{00242873 }

4. The Defendant marketed and sold the Decongestant Products as effective decongestants when it knew or should have known that phenylephrine taken orally provides no relief for nasal congestion. For years, scientific studies using modern testing methods have consistently demonstrated that phenylephrine taken orally is ineffective. However, rather than acknowledge the results of these studies, Defendant has continued to market and sell its oral phenylephrine products as effective decongestants.

5. Had Plaintiff known that the phenylephrine-containing products were ineffective as a nasal decongestant, she would not have purchased them, or would have paid substantially less for them.

6. Accordingly, Plaintiff, on behalf of herself and all other purchasers of Defendant's Decongestant Products containing phenylephrine, seeks to represent classes of purchasers against Defendant for its illegal conduct in falsely marketing and selling the ineffective Decongestant Products.

**PARTIES**

7. Plaintiff Emily Cohen is a resident of Pennsylvania. Plaintiff Cohen purchased CVS Health Nasal Decongestant PE, a CVS store brand product sold by Defendant that contained phenylephrine falsely touted as a nasal decongestant. Plaintiff purchased the product to provide decongestant relief.

8. Defendant CVS Pharmacy, Inc. ("CVS") operates thousands of pharmacies in the United States. CVS is a Rhode Island corporation that is headquartered and has its principal place of business in Rhode Island. CVS sells its own CVS branded products containing phenylephrine, which it claims acts as a nasal decongestant.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from the Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

10. This Court has personal jurisdiction over Defendant by virtue of it transacting and doing business in this District. Defendant has purposefully availed itself of the benefits and protections of this District by continuously and systematically conducting substantial business in this District. Defendant markets and distributes its products in this District.

11. The Court also has personal jurisdiction over the Defendant because its headquarters is in this District.

12. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant maintains key business operations in this District and sells its Decongestant Products in this District.

## FACTUAL ALLEGATIONS

13. The best-selling products in the decongestant market contain phenylephrine, which products constitute approximately 80% of the market for over-the-counter decongestants. Nearly $1.8 billion worth of phenylephrine-containing products were sold in 2022.

14. As reported by *The Wall Street Journal*, "Phenylephrine, first permitted for use in 1938, didn't go through the rigorous clinical trials that regulators require today for medications, and more recent studies found the ingredient to be ineffective at relieving congestion. The latest research prompted pharmacists and physicians to call for ending the sales of the drugs."

{00242873 }

15. Per the *WSJ*, "the FDA said in an analysis…that the oral phenylephrine formulations are safe but ineffective at standard or even higher doses."

16. Further, "the [FDA] said that three large recent industry-funded studies evaluating medicines with phenylephrine by manufacturers found that people who took medicines with phenylephrine fared no better than those who received a placebo. The agency also found that research from decades ago didn't meet current clinical trial design standards and included inconsistent results."

17. Phenylephrine, as Defendant knew or should have known, is ineffective when taken orally. Nevertheless, Defendant marketed and sold the Decongestant Products containing phenylephrine as oral nasal decongestants when in fact phenylephrine is ineffective when administered in that manner.

18. The results of scientific studies of phenylephrine have repeatedly demonstrated that it is ineffective as an oral nasal decongestant. As Leslie Hendeles, PharmD and Randy Hatton, PharmD succinctly stated in the Journal of Allergy and Clinical Immunology in May 2006, "Phenylephrine…is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver…Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[1]

---

[1] Leslie Handeles, PharmD and Randy Hatton, PharmD, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), citing Bickerman HA, Physiologic and pharmacologic studies on nasal airway resistance presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association, Washington, DC, December 8, 1971, available at https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5.

{00242873 }

19. For years, other scientific studies using modern testing methodologies and analysis have consistently demonstrated that phenylephrine is ineffective as an oral decongestant. The results of these studies were or should have been known to Defendant, a large and sophisticated purveyor of phenylephrine containing products that it touted as decongestants.

20. In 2015, University of Florida pharmacy researchers who reviewed testing of oral decongestant pills filed a citizen's petition with the FDA seeking removal of phenylephrine from the list of approved over-the-counter medicines.

21. On September 11 and September 12, 2023, the FDA held a non-prescription Drug Advisory Committee Meeting to discuss the efficacy of oral phenylephrine as a nasal decongestant. The Advisory Committee explained that multiple studies have shown phenylephrine to be no better than a placebo.

22. For example, the Committee described a study conducted by Johnson and Johnson from 2017 to 2018 to evaluate an oral phenylephrine product. As explained by the panel, the trial "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[2]

23. This finding was consistent with the results of earlier studies. In 2015, Meltzer et al. conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The commercially available tablet was reported in an editorial published in the same journal as the study to be Johnson and Johnson's (now Kenvue's) Sudafed PE.[3] The results

---

[2] *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, available at https://www.fda.gov/media/171915/download.
[3] Hatton and Hendeles, Over the Counter Oral Phenylephrine: A Placebo for Nasal Congestion, J. Allergy Clin. Immunol. Prac. (Sept/Oct. 2015).

{00242873 }

of the study were unequivocal: "we failed to identify a dose for [phenylephrine]…that was significantly more effective than placebo in relieving nasal congestion…."[4]

24.     Defendant, as a large and sophisticated seller of oral phenylephrine-containing products, was or should have been aware of the studies suggesting that phenylephrine is not effective as an oral nasal decongestant.

25.     As for the Plaintiff and the other members of the Classes who purchased the Defendant's Decongestant Products to alleviate congestion, one pharmacist who has led the examination of the efficacy of phenylephrine stated, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

## STATUTES OF LIMITATIONS ARE INAPPLICABLE

26.     Plaintiff and the other Class members had no way of knowing about Defendant's deception concerning its Decongestant Products. As consumers, Plaintiff and members of the Classes reasonably believed that the Decongestant Products offered for sale as decongestants by Defendant were actually decongestants.

27.     Within the time period of any applicable statutes of limitations, Plaintiff and the other members of the Classes could not have discovered through the exercise of reasonable diligence that Defendant's Decongestant Products were ineffective.

28.     Plaintiff and the other members of the Classes did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant marketed and sold Decongestant Products that it knew or should have known were not effective. Further, a reasonable and diligent investigation would not have disclosed that Defendant had concealed and

---

[4] Meltzer et al., *Oral Phenylephrine HCI for Nasal Congestion in Seasonal Allergic Rhinitis: A Randomized, Open-label, Placebo-controlled Study*, 3 J. Allergy Clin. Immunol. Prac. 6 (Sept/Oct 2015). Available at https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4.

not disclosed information about the products' inefficacy, which information was only available to Plaintiff and the Classes' members after the public dissemination of the FDA panel's findings in September 2023.

29. For these reasons, the discovery rule for the claims asserted is applicable and the statute of limitations did not start to run, at the earliest, until widespread dissemination of the FDA Panel's findings.

30. In addition, the Defendant was under a continuous duty to disclose to Plaintiff and the Classes' members the true character, quality, and nature of its Decongestant Products.

31. Defendant knowingly, affirmatively, and actively concealed the true nature, quality, and character of its Decongestant Products.

32. Based on the foregoing, the Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

33. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

34. Plaintiff seeks to represent the following Classes:

   a. All persons in the United States, Washington D.C., and Puerto Rico who purchased a CVS brand orally administered Decongestant Product (the "National Class").

   b. All persons in Pennsylvania who purchased a CVS brand orally administered Decongestant Product (the "Pennsylvania Class").

35. Excluded from the Classes are the Defendant, and any of the Defendant's members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers and his or her immediate family members; Court staff assigned to this case; and purchasers for resale.

36. This action has been brought and may be maintained on behalf of the Classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

37. Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of her claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. Numerosity: Rule 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believe that there are thousands of members of each of the Classes based on the size of the market for decongestant products and Defendant's share of the retail pharmacy market, but the precise number of Class members in each Class is currently unknown to Plaintiff. The identities of the members of the Classes can, however, be ascertained during discovery from the records of the Defendant.

39. Commonality and Predominance: Rule 23(a)(2) and (b)(3): This action involves common questions of law and fact, which predominate over any questions affecting only individual members of the Classes, including:

    a. When Defendant knew that phenylephrine was ineffective as a decongestant;

    b. Whether Defendant sold Decongestant Products as effective;

  c. What measures Defendant took to conceal the true nature of its Decongestant Products;

  d. Defendant's duty to disclose the true nature of its Decongestant Products;

  e. Whether Plaintiff and the other members of the Classes overpaid for Defendant's Decongestant Products; and

  f. Whether Plaintiff and the other members of the Classes are entitled to equitable and injunctive relief.

40. Typicality: Rule 23(a)(3): Plaintiff's claims are typical of the other Classes' members' claims because, among other things, Plaintiff purchased one or more of Defendant's Decongestant Products and all the members of the Classes were comparably injured through Defendant's wrongful conduct as described above. Plaintiff and the members of the Classes suffered damages as a direct and proximate result of the same wrongful practices engaged in by the Defendant.

41. Adequacy: Rule 23(a)(4): Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Classes' interests.

42. Declaratory Relief: Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making declaratory relief appropriate, with respect to each Class as a whole.

43. Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no

unusual difficulties are likely to be encountered in managing this case as a class action. The damages or other financial injury suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate the claims against the Defendant, so it would be impracticable for the members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments, increasing the delay and expense to all parties and the court system. By contrast, a class action is suited and intended to eliminate or mitigate such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CAUSES OF ACTION

## COUNT ONE

## PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

44. Plaintiff repeats and realleges the allegations contained in paragraphs 1-43 as if fully set forth herein.

45. Plaintiff brings this cause of action individually and on behalf of the members of the Pennsylvania Class.

46. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. §§201-1, *et seq*. ("Pennsylvania CPL"), prohibits the use of unfair or deceptive acts or practices in the conduct of trade or commerce. The CPL is to be liberally construed to effectuate its purpose.

47. Plaintiff, and other members of the Pennsylvania Class, as purchasers of the Decongestant Products, are consumers within the meaning of the Pennsylvania CPL given that

Defendant's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

48. Defendant's conduct in misrepresenting the benefits of the Decongestant Products or omitting material information constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

49. Defendant also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff and the other members of the Pennsylvania Class, knowing that consumers would rely on the advertisements, packaging, and Defendant's uniform representations to purchase the Decongestant Products.

50. Defendant intended that Plaintiff, and the Pennsylvania Class members, would rely on the deception by purchasing the Decongestant Products, unaware of the material facts and omissions described above. Defendant knew that its customers would continue to rely on its representations that the ingredients the Decongestant Products were effective. This conduct constitutes consumer fraud within the meaning of the Pennsylvania CPL.

51. Defendant's material misrepresentations and non-disclosures set forth above constitute an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the Pennsylvania CPL.

52. Plaintiff and the members of the Pennsylvania Class justifiably relied on the misrepresentations and material omissions with respect to the efficacy of the Decongestant Products as nasal decongestants in their purchases of Defendant's Decongestant Products.

53. Plaintiff and the members of the Pennsylvania Class suffered damages as a direct and proximate result of the unfair acts or practices of Defendant alleged herein. Defendant's misrepresentations or omissions of material fact were done knowingly, intentionally, willfully, or with reckless disregard for the consequences of its actions.

54. Plaintiff and the members of the Pennsylvania Class would not have purchased the Decongestant Products but for the promised benefits and omissions and concealment of the lack of efficacy of the Decongestant Products as nasal decongestants, and the Decongestant Products sold had no intrinsic value as nasal decongestants to them. Plaintiff's and the Pennsylvania Class members' purchases of the Decongestant Products for the prices they paid constitutes an ascertainable loss.

55. As a proximate result of the above-described violations of the Pennsylvania CPL, Plaintiff, and the members of the Pennsylvania Class: (a) purchased the Decongestant Products when they would not otherwise have done so; and (b) suffered economic loss consisting of the cost of purchasing the Decongestant Products or purchasing them for more than they were worth.

## COUNT TWO

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

56. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-43 as if fully set forth herein.

57. Plaintiff brings this cause of action on behalf of the Nationwide Class and the Pennsylvania Class.

58. At all times relevant all fifty states and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose.[5]

59. Defendant was at all relevant times a "merchant" within the meaning of Article 2 of the U.C.C.

60. The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C.

61. Defendant was obligated to provide Plaintiff and the other members of the Classes Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold and conformed to the standards of the trade.

62. Defendant impliedly warranted that the Decongestant Products were of merchantable quality and fit for that purpose.

63. Defendant breached the implied warranty of merchantability because its Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

64. Defendant's breach of the implied warranty of merchantability was a direct and proximate cause of Plaintiff's and the other members of the Classes' damages.

---

[5] *E.g.,* Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

## COUNT THREE

## UNJUST ENRICHMENT

65. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-43 as if fully set forth herein.

66. Plaintiff brings this claim on behalf of the Nationwide Class and the Pennsylvania Class.

67. There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements: the defendant received a benefit from the plaintiff, and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. There is no material conflict relating to the elements of unjust enrichment between the different jurisdictions where the Class members reside.

68. Plaintiff and all other National and Pennsylvania Class members conferred a benefit on Defendant by purchasing its Decongestant Products containing an ineffective ingredient.

69. Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of its Decongestant Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that its Decongestant Products were effective for providing nasal congestion relief when in fact they were not, which caused injuries to Plaintiff and all members of the Classes because they paid a price premium due to Defendant's deception.

70. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and all members of the National and Pennsylvania Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT FOUR

## BREACH OF EXPRESS WARRANTY

71. Plaintiff repeats and realleges the allegations in Paragraphs 1-43 as though fully set forth herein.

72. Plaintiff brings this cause of action on behalf of the National and Pennsylvania Classes.

73. Defendant expressly warranted that the phenylephrine in its Decongestant Products would act as a nasal decongestant.

74. Defendant breached this express warranty in connection with the marketing and sale of its Decongestant Products because the phenylephrine in its Decongestant Products does not act as a nasal decongestant.

75. Had Plaintiff and the members Class known the Decongestant Products were ineffective as decongestants, they would not have purchased them, or would not have paid as much for them.

76. To the extent privity may be required, Plaintiff and the members of the Classes purchased the Decongestant Products from the Defendant.

77. As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff and the members of the Classes have sustained injury and damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes, respectfully requests that the Court enter judgement in Plaintiff's and the Classes' favor and against Defendant, as follows:

A. Certification under Fed. R. Civ. P. 23 of the proposed Classes with Plaintiff as the Class Representative;

B. Appointment of Plaintiff's counsel as Class Counsel;

C. Equitable relief, including, but not limited to:

1. Requiring Defendant to make full disclosure of its knowledge of the lack of efficacy of its Decongestant Products;

2. Disgorgement of Defendant's profits from the sales of its Decongestant Products;

3. Restitution;

D. Damages, in an amount to be determined at trial;

E. An order requiring Defendant to pay both pre-and post-judgment interest on all amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other and further relief as may be appropriate.

{00242873 }

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: October 3, 2023

           /s/ Paige Munro-Delotto
Paige Munro-Delotto
MUNRO-DELOTTO LAW, LLC
400 Westminster Street, Ste. 200
Providence, RI 02903
(401) 521-4529

Joseph C. Kohn
William E. Hoese
Zahra R. Dean
Elias A. Kohn
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19107
(215) 238-1700

Steven A. Kanner
William H. London
FREED KANNER LONDON
   & MILLEN, LLC
100 Tri-State International Drive, Suite 128
Lincolnshire, IL 60069
(224) 632-4500

Jonathan M. Jagher
FREED KANNER LONDON
   & MILLEN, LLC
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6770

Attorneys for Plaintiff and the proposed Classes

{00242873 }